IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY E. ROMAN and ROBERTA D. ROMAN, | : : | No. 3:11cv1614 |
| Plaintiffs | : : | (Judge Munley) |
| v. | : : | |
| CHESAPEAKE APPALACHIA, L.L.C., Defendant | : : : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is Defendant Chesapeake Appalachia, L.L.C.'s motion to compel arbitration or, in the alternative, to dismiss counts II and III and the demands for punitive damages and attorneys fees.  (Doc. 3). The matter is fully briefed and ripe for disposition.  For the following reasons, the court will compel arbitration.

**Background**

Plaintiffs Larry E. Roman and Roberta D. Roman (collectively "plaintiffs") initiated the instant action on August 29, 2011 with a three count complaint against Defendant Chesapeake Appalachia, L.L.C. (hereinafter "defendant"). (See Doc. 1, Compl. (hereinafter "Compl.")).  In Count I, plaintiffs seek a declaration, pursuant to the Declaratory Judgment Act, 28 U.S.C § 2201, that their oil and gas lease with defendant is no longer in effect.  (Id. ¶¶ 29-42). Count II is a Pennsylvania state law claim for slander of title, in which plaintiffs seek $250,000.00 in damages.  (Id. ¶¶ 43-51).  Count III is a Pennsylvania state law claim for breach of covenant of good faith and fair dealing, in which

plaintiffs demand $250,000.00 in compensatory damages and $250,000.00 in punitive damages for defendant's alleged bad faith. (Id. ¶¶ 52-62). The well-pleaded facts alleged in the complaint are summarized as follows.

On January 19, 2001, plaintiffs executed an "Oil and Gas Lease" (hereinafter "the lease") with Central Appalachian Petroleum. (Id. ¶ 7; Doc. 1-2, Ex. A, Oil & Gas Lease). This lease provides the lessee with exclusive rights to "all the oil and gas and their constituents, whether hydrocarbon or non-hydrocarbon, underlying" plaintiffs land in Ulster Township, Bradford County, Pennsylvania. (Doc. 1-2, Ex. A, Oil & Gas Lease). The lease also grants the lessee with the rights to drill, explore, construct roads, lay pipelines, store natural resources and otherwise make use of its right to the oil and natural gas on the land. (Id.) Approximately 135.88 acres of plaintiffs' property is subject to this lease. (Id.; Compl. ¶ 10). Some time after executing the lease, Central Appalachian Petroleum assigned its interest in the lease to defendant. (Compl. ¶¶ 8-9).

The lease has a primary term of ten years, commencing on January 19, 2001. (Id. ¶ 12; Doc. 1-2, Ex. A, Oil & Gas Lease). The lease provides that the primary term of ten years would be extended "for as long thereafter as operations are conducted on the Leasehold in search of or production of oil, gas, or their constituents, or for as long as a well capable of production is located on the Leasehold, or for as long as extended by provision herein, or for as long as the Leasehold is used for underground storage of gas, or for

2

the protection of stored gas." (Doc. 1-2, Ex. A, Oil & Gas Lease).  Plaintiffs contend that "[n]o drilling, exploration, production, transportation or storage operation sufficient to extend the Lease has been conducted on the plaintiffs' leasehold by the Lessee or any successor including defendant Chesapeake" since the lease was executed.  (Compl. ¶ 14).

The lease contains two other provisions that are particularly pertinent to this action.  The first of these provisions provides that the leasehold, or a portion of the leasehold, could be "unitized."  (Id. ¶ 15).  This unitization provision grants the lessee the "right to pool, unitize, or combine all or parts of the Leasehold with other lands, whether contiguous or not contiguous, leased or unleased, whether owned by Lessee or by others, at a time before or after drilling to create drilling or production units either by contact right or pursuant to government authorization."  (Doc. 1-2, Ex. A, Oil & Gas Lease).  The lease provides that the lessor will receive a proportional share of the royalties if the lessor's property is unitized.  (Id.; Compl. ¶ 17).  If the lessor's property is placed into a unit, "the drilling, operations in preparation for drilling, production from, or payment for Royalty, Shut-in Royalty, or Delay in Marketing for a well on such a unit shall have the same effect upon the terms of this Lease as if a well were located on the Leasehold."  (Doc. 1-2, Ex. A, Oil & Gas Lease).

The second provision of this lease that is pertinent to this action is the arbitration clause, which provides as follows:

> ARBITRATION.  In the event of a disagreement between Lessor and Lessee concerning this lease, performance thereunder,

3

or damages caused by Lessee's operations, settlement shall be by a panel of three disinterested arbitrators. Lessor and Lessee shall appoint and pay the fee of one each, and the two so appointed shall appoint the third, whose fee shall be borne equally by Lessor and Lessee. The award shall be by unanimous decision of the arbitrators and shall be final.

(Doc. 1-2, Ex. A, Oil & Gas Lease).

On January 18, 2011, at 4:56 p.m., defendant filed a unitization declaration with the Bradford County Recorder of Deeds. (Compl. ¶ 19; Doc. 1-3, Ex. B, Decl. & Notice of Pooled Unit). This pooled unit, named the "Wasyl Unit," includes a portion of plaintiffs' leased property. (Compl. ¶¶ 19-20). Plaintiffs allege that defendant was aware, or should have been aware, that the primary term of the lease was going to expire and no "operations" triggering an extension of the lease had been conducted. (Id. ¶ 22). Plaintiffs contend that defendant filed the declaration of the Wasyl Unit on the eve of the expiration of the primary term of the lease in an attempt to extend the term. (Id. ¶¶ 21-22). Plaintiffs further posit that insufficient operations were conducted on the leasehold property and on the Wasyl Unit to trigger an automatic extension under the lease, that their property cannot be considered a part of the Wasyl Unit as a matter of law and public policy, and that defendant's unlawfully clouded the title to plaintiffs' property. (Id. ¶¶ 23-25).

Defendant responded to plaintiffs complaint with a motion to compel arbitration, or, in the alternative, to dismiss plaintiffs' Pennsylvania state law claims for slander of title and bad faith and to strike plaintiffs' requests for attorney's fees and punitive damages. (See Doc. 3). The parties fully briefed

4

the issues, bringing the case to its current posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332.  Plaintiffs Larry Roman and Roberta Roman are citizens and residents of the Commonwealth of Pennsylvania.  (Compl. ¶ 1).  Defendant Chesapeake Appalachia, L.L.C. is an Oklahoma limited liability company with a business address in Oklahoma.  (Id. ¶ 2).  Because complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000.00, the court has jurisdiction over the case.  See 28 U.S.C. § 1332.  Because we are sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

The question in this case is whether the parties should be compelled to arbitrate this dispute.  Both Federal and Pennsylvania state law strongly favor the enforcement of arbitration provisions.[1]  See Kirleis v. Dickie, McCamey &

---

[1] Another court sitting in this district has held that, when it comes to oil and gas leases, Pennsylvania law, and not the FAA, applies.  See Ulmer v. Chesapeake Appalachia, L.L.C., No. 4:08-cv-2062 (Doc. 11), slip op. at 4 (M.D. Pa. Jan. 16, 2009).  Defendant disputes whether the holding in Ulmer is applicable in the instant case.  (See Doc. 5, Br. in Supp. of Def.'s Mot. to Compel Arbitration at 5 n.2).  The court need not resolve this dispute because the FAA and the Pennsylvania Uniform Arbitration Act determine the scope of arbitration provisions similarly.  See State Farm Mut. Auto. Ins. Co. v. Coviello, 233 F.3d 710, 713 n.1 (3d Cir. 2000) ("[T]here is no meaningful difference between federal and Pennsylvania law when reviewing the scope of

Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) ("It is well established that the Federal Arbitration Act (FAA), reflects a 'strong federal policy in favor of resolution of disputes through arbitration.'" (quoting Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003))); Dodds v. Pulte Home Corp., 909 A.2d 348, 351 (Pa. Super. Ct. 2006) ("It is hornbook law that Pennsylvania favors the enforceability of agreements to arbitrate." (citing Quiles v. Fin. Exch. Co., 897 A.2d 281, 285 (Pa. Super. Ct. 2005))). Contracts with an arbitration clause are treated with a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not suceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

Courts applying either Federal and Pennsylvania state law conduct the same two part inquiry to determine the enforceability of arbitration provisions. First, the court must determine whether "a valid agreement to arbitrate exists," and, second, whether "the particular dispute falls within the scope of the agreement." Kirleis, 560 F.3d at 160; see also Messa v. State Farm Ins. Co., 641 A.2d 1167, 1168 (Pa. Super. Ct. 1994). "A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court

---

an arbitration clause.").

proceedings pending arbitration as well as an order compelling such arbitration." Alexander, 341 F.3d at 263-64; see also 9 U.S.C. §§ 3, 4.

**Discussion**

The parties to the instant dispute agree that a valid agreement to arbitrate exists, thus satisfying the first step of the two-step process described in Kireleis v. Dickies, McCamey & Chikote, P.C. and Messa v. State Farm Insurance Company. (See Doc. 5, Br. in Supp. of Def.'s Mot. to Compel Arbitration at 6; Doc. 7, Br. in Opp'n to Def.'s Mot. to Compel Arbitration at 3). The parties dispute the second prong, whether the particular dispute falls within the scope of the arbitration agreement.

First, plaintiffs argue that the issue of arbitration is moot because the primary lease term expired on January 18, 2011 and because "plaintiffs' claims relate to conduct independent of the lease . . . ." (Doc. 7, Br. in Opp'n to Def.'s Mot. to Compel Arbitration at 3). Plaintiffs do not support this argument with case law. In fact, plaintiffs temper their contention that the expiration of the lease term voids the arbitration clause by recognizing precedent from this district in direct contrast with their position. See Beinlich v. Chesapeake Appalachia LLC, No. 3:11-cv-566 (Doc. 13) (M.D. Pa. May 31, 2011) (order granting motion to compel arbitration). Like the court in Beinlich, we find that the agreement to arbitrate does not expire with the alleged termination of the lease term. The court further agrees that "it makes no sense to allow a plaintiff (sic) to avoid arbitration by arguing that the lease has

7

expired when the very issue of the litigation is whether the lease remains in effect." (Doc. 9, Reply Br. in Supp. of Def.'s Mot. to Compel Arbitration at 2).

Second, plaintiffs contend that the arbitration clause at issue does not cover their tort claims. Plaintiffs essentially concede that their claim for declaratory judgment should be compelled to arbitration; plaintiffs instead focus on characterizing their tort claims as falling outside the scope of the arbitration clause. (Doc. 7, Br. in Opp'n to Def.'s Mot. to Compel Arbitration at 4). Defendant counters plaintiffs' argument by pointing to the broad language of the arbitration provision, which requires arbitration of any disagreement "concerning this lease, performance thereunder, or damages caused by Lessee's operations . . . ." (Doc. 1-2, Ex. A, Oil & Gas Lease). Defendant maintains that courts have broadly interpreted arbitration clauses covering claims "relating to" or "concerning" the agreement and that tort claims, such as the ones plaintiffs allege, fit under these broad arbitration claims. See U.S. Claims, Inc. v. Saffren & Weinberg, LLP, No. 07-0543, 2007 WL 4225536, at *7 (E.D. Pa. Nov. 29, 2007) ("It is well-established that where separate tort claims arise out of the same facts as the breach of contract claim, a broadly worded arbitration provision covers such claims."); Hearon v. AstraZeneca LP, No. 02-3189, 2003 WL 21250640, at *5 (E.D. Pa. Mar. 24, 2003) (finding that "the breadth of the language of the arbitration clause establishes that it was intended to apply to all disputes related to Plaintiff's termination" and not merely disputes concerning the specific provisions of her employment

8

agreement).

The court agrees with defendant that all of plaintiffs' claims in the complaint should be compelled to arbitration. The language of the arbitration provision, which requires the arbitration of "disagreement[s] between Lessor and Lessee concerning this lease, performance thereunder, or damages caused by Lessee's operations," is broad. (See Doc. 1-2, Ex. A, Oil & Gas Lease). The arbitration clause does not exclude tort claims or claims concerning the lease from compulsory arbitration. It is settled that courts in Pennsylvania compel tort claims to arbitrate if the arbitration clause at issue is broad enough. See Muhlenberg Twp. Sch. Dist. Auth. v. Pa. Fortunato Constr. Co., 333 A.2d 184, 186 (Pa. 1975). The cases plaintiffs rely on for support involve tort claims unrelated to the underlying contract and arbitration provisions that are narrower than the instant arbitration clause. Compare (Doc. 1-2, Ex. A, Oil & Gas Lease) (stating that "concerning this lease, performance thereunder, or damages caused by Lessee's operations" are to be compelled to arbitration), with Hazleton Area Sch. Dist. v. Bosak, 671 A.2d 277, 279, 282 (Pa. Commw. Ct. 1996) (holding that an arbitration provision providing that the parties will arbitrate disputes "arising out of or relating to this Agreement or breach thereof" is not inclusive of negligence claims for defects in a structure), and Edelstein v. Martin, No. 1849, slip op. (Pa. Ct. Comm. Pls. Phila. Co. Mar. 18, 2008) (finding that the "wrongful act" torts alleged against a former partner are not subject to compulsory arbitration

because these torts did not fall under the arbitration agreement, which covers disputes that "arise out of" or "relate to" the partnership agreement).

With respect to plaintiffs' first tort claim, slander of title, the court finds that this claim falls under this arbitration clause. Plaintiffs themselves describe this claim as "rest[ing] on allegations regarding defendant's bad faith recording of a declaration of unitization on January 18, 2011, only hours before the ten-year primary term of plaintiff's (sic) lease was to expire, and on defendant's failure, within the primary term of the lease, to conduct operations on the leasehold or the unitized lands sufficient to extend the lease past the primary term." (Doc. 7, Br. in Opp'n to Def.'s Mot. to Compel Arbitration at 6). Thus, plaintiffs' own description of this claim explains that it concerns the unitization provision of the lease and whether the lease was validly extended.

Plaintiffs' second tort claim for breach of the covenant of good faith and fair dealing similarly falls under the arbitration clause and will be compelled to arbitration. Plaintiffs point to the "terms of the parties' lease in the instant case" to support their contention that defendant undertook the unitization of plaintiffs' property in bad faith. (Doc. 7, Br. in Opp'n to Def.'s Mot. to Compel Arbitration at 13). Furthermore, when it comes to this tort claim, plaintiffs explained that their "grievance is . . . with the bad faith recording of the declaration in light of defendant's failure and inability to develop the leasehold or the unit prior to the expiration of plaintiff's (sic) lease." (Id.) Therefore, plaintiffs' summary of this claim establishes that the bad faith claim concerns

the terms of the lease and whether the unitization was a valid exercise of defendant's rights under the lease.[2]

**Conclusion**

For the reasons stated above, the court will compel arbitration in this case. In light of the court's ruling compelling arbitration, it is not necessary to address defendant's argument in the alternative. An appropriate Order follows.

---

[2] Our decision to compel all of plaintiffs' claims to arbitration is consistent with recent precedent in this district in which another court compelled nearly identical claims to arbitration pursuant to a nearly identical arbitration clause. See generally Vosburg v. Chesapeake Appalachia, L.L.C., No. 3:11-cv-1615 (Doc. 10), slip op. (M.D. Pa. Nov. 16, 2011). The plaintiffs in Vosburg and the instant case are represented by the same attorney, who raised the same arguments in opposition to compelled arbitration. The court in Vosburg rejected plaintiffs' arguments against compelled arbitration and noted that this case is similar to other cases in which separate tort claims were compelled to arbitration. See id. at 9 (quoting U.S. Claims, Inc., 2007 WL 4225536, at *7). Therefore, like the court in Vosburg, we will compel this case to arbitration.

11

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LARRY E. ROMAN and** | : | **No. 3:11cv1614** |
| **ROBERTA D. ROMAN,** | : | |
| Plaintiffs | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| **CHESAPEAKE APPALACHIA, L.L.C.,** | : | |
| Defendant | : | |

## ORDER

**AND NOW**, to wit, this 7th day of June 2012, it is hereby **ORDERED** that:

1. Defendant Chesapeake Appalachia, L.L.C.'s motion to compel arbitration or, in the alternative, to dismiss counts II and III and the demands for punitive damages and attorney's fees (Doc. 3) is **GRANTED**;

2. Plaintiffs are **COMPELLED TO ARBITRATE** all claims contained in their complaint (Doc. 1); and

3. The Clerk of Court is directed to **ADMINISTRATIVELY CLOSE** this case.

                                               **BY THE COURT:**

                                               s/ James M. Munley
                                               **JUDGE JAMES M. MUNLEY**
                                               **United States District Court**